SCHOCK, GUSMER AND CO., INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 105762.   Promulgated August 4, 1942.

*Sidney Fass, Esq.*, and *Emil T. Weiler, C. P. A.*, for the petitioner.
*Paul P. Lipton, Esq.*, for the respondent.

OPINION.

MELLOTT: The Federal statute (sec. 23, Revenue Act of 1936) authorizes the deduction of taxes paid or accrued within the taxable year. Respondent determined that, inasmuch as petitioner's books were kept upon an accrual basis, the real estate taxes, "which were assessed against * * * [it] on October 1, 1936, are deductible for income tax purposes during the year 1936." He made no specific reference in the notice of deficiency to the personal property taxes and both parties, upon brief, discuss the two classes of taxes as if the same rules were applicable to each. For reasons which will hereinafter appear it has been deemed expedient to consider them separately; but first the contentions of the respective parties will be stated.

Petitioner contends that "the taxes must be said to have accrued when the process of valuation and assessment ended and the task of levying and collection began, that is, when pursuant to * * * [the statutes] * * * the County Board of Taxation on May 4, 1937 delivered to the collectors of the various taxing districts the corrected, revised and completed duplicate tax lists, certified * * * to be a true copy of the taxes assessed." Respondent summarizes his position to be "that the ownership of New Jersey real estate on October 1, as of which date the assessment is made, is the event which determines the liability for taxes thereon and that accordingly such taxes accrue on that date for Federal income tax purposes."

The parties agree that in determining when state property taxes accrue the laws of the particular state must be examined. No attempt will be made to set out all of the statutes which are applicable. They are all shown in "New Jersey Statutes Annotated Permanent Edition Title 54, Taxation" and the references which will hereinafter be made, unless otherwise indicated, are to the sections shown in this volume.

The findings outline the steps taken by the taxing authorities in connection with petitioner's state taxes. The steps seem to have been in accordance with the law. Thus, under section 54:4–35 the assessor is to "begin the work of making assessments * * * on October first * * * and * * * complete the work by January tenth following" when he files his assessment list with the county board of taxation. Public notice is given as required by section 54:4–38 and the board meets "for the purpose of examining, revising and correcting the tax lists" (sec. 54:4–46), and to "do everything necessary for the taxation of all property in the county equally and at its true value." (Sec. 54:4–47.) "Upon ascertaining the total amount of tax to be

raised" it determines the rate to be used and causes an extension of the amount of tax to be made on the duplicate lists (sec. 54:4–48), which are delivered to the collectors. (Sec. 54:4–55.) Each collector of a taxing district "at once" begins "the work of * * * delivering tax bills to the individuals assessed" and is required to complete that work at least two months before the third installment of taxes falls due. (Sec. 54:4–64.) He is also required to prepare and mail or otherwise deliver to the individuals assessed, "at least two months before the first installment of taxes falls due * * * a tax bill" for the first and second installments, computed "at one-half of the complete tax last previously levied." (Sec. 54:4–64.) The first installment is payable on February 1, the second on May 1, the third on August 1, and the fourth on November 1, "after which dates, if unpaid, they shall become delinquent." (Sec. 54:4–66.) "The amount to be payable for the third and fourth installments shall be the full tax as levied for the current year, less the amount charged as the first and second installments. * * *" (Sec. 54:4–66.) See *Minnie M. Coward*, 39 B. T. A. 1158, and *Commissioner* v. *Coward*, 110 Fed. (2d) 725, for additional discussion of New Jersey taxes.

The provisions referred to above are applicable both to real estate and personal property taxes. Personal property taxes, however, constitute a personal liability of the taxpayer (sec. 54:4–1) and may be enforced by distress and sale (sec. 54:4–78) or by arrest and imprisonment (sec. 54:4–79). The severance of ownership of such property after October 1 or even its absolute destruction does not relieve the owner of it on that date from such personal liability. *Hann* v. *State Board of Taxes and Assessment*, 147 Atl. 724. Applying the test laid down in the oft-cited case of *United States* v. *Anderson*, 269 U. S. 422, it is apparent that all of the events occurred on October 1, 1936, fixing petitioner's liability for the personal property tax. We have not overlooked the fact that the rate was not fixed until later and the precise amount to be paid was not then certain. That, however, does not prevent accrual of the tax. *H. H. Brown Co.*, 8 B. T. A. 112; *First Bond & Mortgage Co.*, 27 B. T. A. 430; *Texas Coca-Cola Bottling Co.*, 30 B. T. A. 736; *Gatens Investment Co.*, 36 B. T. A. 309; *Carl K. Lifson, Administrator*, 36 B. T. A. 593; affd., 98 Fed. (2d) 508; certiorari denied, 305 U. S. 662. The Commissioner, in our judgment, correctly disallowed the deduction of the personal property taxes in the fiscal year before us.

The claimed deduction for real estate taxes can not be disposed of so summarily. The same tests should be applied as have been applied in connection with the personal property taxes. Under section 54:4–1, while all property in New Jersey is to be "assessed to the owner thereof with reference to the amount owned on October first

in each year", it is significant that the legislature has singled out "the person * * * assessed for personal property", making him "personally liable" for the tax. *Inclusio unius est exclusio alterius.* Tax on realty is not a personal obligation of the owner, *Bea* v. *Turner & Co.*, 115 N. J. S. 189; 169 Atl. 832, and "the fact that the property has been assessed prior to sale, does not in the eyes of the New Jersey legislature mean that the tax resulting from that assessment is to be borne by the seller." *Commissioner* v. *Coward, supra.* Cf. *Borough of Wrightstown* v. *Salvation Army*, 123 Atl. 607. The legislature has the power to discriminate among the various classes of property for the purpose of taxation, *State Board of Assessors* v. *Central R. Co.*, 48 N. J. Law 146; 4 Atl. 578; *Chancellor of State* v. *City of Elizabeth*, 65 N. J. Law 479; 47 Atl. 454; affd., 66 N. J. Law 687; 52 Atl. 1130, and has done so. Thus not only is there no personal liability of the former owner—except the apportionment between buyer and seller on the basis of the calendar year [1]—but no arrest or imprisonment for default in payment may be made (sec. 54:4-79) and no lien attaches unless the taxes are unpaid on and after December first of the year in which they fall due. (Sec. 54:5-6.) Petitioner, then, could have sold its real estate after October 1, 1936, and prior to January 1, 1937, without becoming liable for any of the real estate taxes for the current year 1937 and the property would not have been subject to any lien for taxes (assuming, of course, that prior years' taxes had been paid). Indeed such a sale, even if made after January 1, 1937, would not have subjected petitioner to a personal liability for the taxes except for the provisions of section 54:4-56, *supra.*

The liability in *rem*, as the Circuit Court of Appeals for the Third Circuit observed in the *Coward* case, *supra*, "may well afford a basis for 'accruing' the tax in the accounting sense" as of October 1 of the preceding year. In the footnote, however, the court pointed out that a ruling by the department to that effect is not in harmony with the theory, generally announced, that real estate taxes accrue in the absence of personal liability at the time the tax lien takes effect. Since the attachment of the tax lien occurred as the last, rather than the first, step in the tax cycle, "the General Counsel's failure to follow the general theory is understandable." Inferentially the court anticipated the obvious absurdity of attempting to do what petitioner here requests—i. e., to shift the accrual date to the time the amount of tax becomes fixed. Two installments of taxes have already become due before this date and in the normal course of events have been paid.

---

[1] Under section 54:4-56, if not otherwise provided by agreement between the seller and the purchaser, the seller is "liable for the payment of such proportion of the taxes for the current year * * * as the time between the previous January first and the date of the delivery of the deed * * * bears to a full calendar year."

The most fundamental principle of an accrual method of accounting would be violated if it should be held that an obligation to pay taxes, though carried out in full, had not yet ripened into an accruable item merely because the mechanics of determining the amount had not been carried out and the lien of the sovereign had not attached. We think, therefore, it is appropriate to eliminate from further consideration both the lien date and the date the assessment is completed.

But while reason impels the elimination of some of the suggested dates, search for the true one remains somewhat illusory. In attempting to find it we think consideration must be given, not only to the dates specifically set out in the statutes but also to those implicit in the whole scheme of taxation. This seems to be the practical approach. Cf. *Farmers Loan & Trust Co.* v. *Minnesota,* 280 U. S. 204, 212. Real estate taxes are imposed upon an annual basis in New Jersey, *Empress Mfg. Co.* v. *City of Newark,* 160 Atl. 388, 389. In this they are like income taxes. Cf. *Burnet* v. *Sanford & Brooks Co.,* 282 U. S. 359. The general plan seems to be that they are to be assessed and collected in the calendar year, the basis for assessment being the price at which the real estate "would sell for at a fair and bona fide sale by private contract on October first last." (Sec. 54:4-36.) The numerous references in the statutes to the taxes of "the current year" and "the preceding year", the requirement that two installments be paid before "the full tax as levied for the current year" is known, the necessity of the transmittal by the state comptroller to the county board of "a statement of the amount of tax appropriated by the state for that year * * *" (sec. 54:4-39), and the filing of similar statements by the various municipalities and subdivisions (sec. 54:4-41 *et seq.*), together with the provisions of section 54:4-56 referred to above, apportioning the tax between the seller and purchaser "between the previous January first and the date of delivery of the deed", all support this view. It is therefore reasonable to conclude that all of the real estate taxes for the calendar year accrued at the same time, regardless of the fact they were payable in installments.

In reaching the conclusion that all of the real estate taxes should be accrued at the same time we have not overlooked the line of cases, some of which are cited by the parties, in which prorating of the taxes has been approved. See, e. g., *Carondelet Building Co.* v. *Fontenot,* 111 Fed. (2d) 267; *Citizens Hotel Co.* v. *Commissioner,* 127 Fed. (2d) 229; *Commissioner* v. *Rust's Estate,* 116 Fed. (2d) 636; and *New Orleans Cold Storage & Warehouse Co., Ltd.,* 40 B. T. A. 121. Some of the cases cited dealt with taxpayers keeping their books upon an accrual basis and making return, during the particular period, for less than a full year. In others the question involved an allocation of

taxes between vendor and vendee. The cases in the latter group were overruled by the recent decision of the Supreme Court in *Magruder* v. *Supplee*, —— U. S. —— (May 25, 1942). Whether it had a similar effect upon those in the other group need not be determined in this proceeding. Cases such as *Walsh-McGuire Co.* v. *Commissioner*, 97 Fed. (2d) 983, and others cited by the respondent, though sound in principle, are not applicable. In most of them the lien for taxes attached at the time the assessment was made or the owner became personally liable for the tax.

The question before us, simply stated, is: May New Jersey real estate taxes be accrued during a fiscal period beginning January 1 and ending August 31? We think this question must be answered in the affirmative. During this period—and in our judgment prior to February 1, though this need not be decided—all, or the last of the necessary, events occurred fixing the owner's liability for the taxes and making them a charge upon the land which, if not paid, would ripen into a lien. Personal liability, in the event of sale after January 1, existed under section 54:4–56, *supra*, and the lien, which would attach on "December first of the year in which they fall due" under section 54:5–6 would include any unpaid installment. It follows that the respondent erred in denying the deduction of the real estate taxes.

Reviewed by the Board.

*Decision will be entered under Rule 50.*

MURDOCK dissents.

———

SMITH, dissenting: The question presented by this proceeding is whether the petitioner, a New Jersey corporation with its principal place of business in Hoboken and making its income tax returns in accordance with its books of account kept upon the accrual basis, is entitled to deduct from gross income in its return for the fiscal period January 1 to August 31, 1937, any amount for general property and tangible personal property taxes levied by the city of Hoboken for 1937. For years prior to 1937 petitioner had been making returns upon the basis of the calendar year. It obtained permission from the respondent to change its basis of reporting from the calendar year to a fiscal year ended August 31. In order to make the change it was necessary for it to file an income tax return for the eight-month period January 1 to August 31, 1937.

In its prior calendar year returns the petitioner deducted from gross income the general property and tangible personal property taxes which became due and were paid by it during the calendar year. The respondent granted permission to the petitioner to change from a calendar year to a fiscal year basis of reporting, provided proper adjust-

ments were made in its books of account and returns of income. In its return for the eight-month period ended August 31, 1937, it deducted from gross income the entire amount of real estate ($6,893.91) and personal property ($2,042.64) taxes which became due and payable for the entire calendar year 1937. The respondent disallowed the deduction of the entire amount. In this case the Board holds that the petitioner is entitled to deduct the entire amount of the general property taxes, but no part of the tangible personal property taxes, for the reason that the latter taxes became a personal liability of the corporation on October 1, 1936.

Section 41 of the Revenue Act of 1936 provides:

SEC. 41. GENERAL RULE.

The net income shall be computed upon the basis of the taxpayer's annual accounting period (fiscal year or calendar year, as the case may be) in accordance with the method of accounting regularly employed in keeping the books of such taxpayer; * * *

In *United States* v. *Anderson*, 269 U. S. 422, the Court said that the provision of the income tax law which permitted taxpayers to make returns of income upon the accrual basis was:

* * * to enable taxpayers to keep their books and make their returns according to scientific accounting principles, by charging against income earned during the taxable period, the expenses incurred in and properly attributable to the process of earning income during that period; * * *

The taxes with which we are here concerned are annual taxes. They were levied by the city of Hoboken for the purpose of obtaining revenues to meet expenses for the calendar year 1937. Under the provisions of the income tax law taxes paid or accrued are a legal deduction from gross income. If it be true, as the Supreme Court has said, that the accrual system was to permit the deduction from gross income of expenses "incurred in and properly attributable to the process of earning income", I can not see why the petitioner is not entitled to deduct from gross income for the fiscal period here in question an aliquot part of the annual taxes imposed for 1937 and I see no reason for differentiating between real estate and tangible personal property taxes. The question is whether the taxes accrued in an accounting sense—whether any part of them may properly be said to be attributable to the process of earning income for the fiscal period in question. It was held by the Board in *New Orleans Cold Storage & Warehouse Co., Ltd.*, 40 B. T. A. 121, that a corporation which kept its books of account and made its returns upon the accrual basis and obtained permission of the Commissioner to change from a fiscal year to a calendar year basis, and had to file a return for a fractional part of a year, as this petitioner was required to do, was entitled to deduct from the gross income shown on the short

return an aliquot part of the real and personal property taxes paid upon an annual basis. This was also the conclusion reached by the Circuit Court of Appeals for the Fifth Circuit in *Carondelet Bldg. Co.* v. *Fontenot*, 111 Fed. (2d) 267. Cf. *Citizens Hotel Co.* v. *Commissioner*, 127 Fed. (2d) 229.

It is not entirely plain from the findings of fact what the petitioner's books of account showed as to the amount of general property and personal property taxes charged as an expense for the period January 1 to August 31, 1937. It is definitely stated, however, that in the return filed for that period the petitioner deducted the full amount of those taxes which it would have deducted on a return for the full calendar year. Upon the principle of *United States* v. *Anderson*, *supra*, I think that the deduction should be limited to eight-twelfths of those taxes. The evidence clearly shows that the petitioner attempted month by month to charge to "General Factory Expense" a portion of its annual taxes. From its standpoint it was immaterial whether they were general property taxes or tangible personal property taxes. They were all an expense of doing business.

The taxes involved herein were levied as 1937 taxes. From the standpoint of reaching a fair and just amount to be allocated to the eight-month period before us it is immaterial whether it be considered that the taxes were levied for the 12-month period October 1, 1936, to September 30, 1937, or for the calendar year 1937. In either event the eight-month period falls within such year.

In my opinion petitioner is entitled to deduct from gross income for the fiscal period here in question eight-twelfths of the $8,936.55 general property and personal property taxes levied for 1937, and no more.

The question before us in this proceeding is entirely different from that which was before the Supreme Court in *Magruder* v. *Supplee*, —— U. S. —— (May 25, 1942). The question there was whether a person who, for instance, purchased an apartment house for $50,000 with an agreement between the contracting parties that rents, interest, and taxes should be adjusted to the date of sale, could deduct from gross income during his period of ownership the portion of the taxes which he contracted to pay but which had become a lien upon the property or a personal liability of the former owner prior to the date of sale. The Court held that where the lien for the taxes had attached before the date of sale, or the former owner had a personal liability for the payment of the taxes, the amount paid as taxes by the purchaser was not a legal deduction from gross income. The theory of the Court was that such payment was a part of the purchase price. That principle is not involved in this proceeding.